**E-Filed 9/16/2011**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TRENT WEST, <br><br> Plaintiff, <br><br> v. <br><br> QUALITY GOLD, INC., <br><br> Defendant. | Case No. 5:10-cv-03124-JF (HRL) <br><br> ORDER[1] CONSTRUING CLAIMS OF UNITED STATES PATENT NOS. 6,928,734 AND 7,032,314 |

On June 13, 2011, the Court held a hearing for the purpose of construing disputed terms in the claims of United States Patent Nos. 6,928,734 ("the '734 patent") and 7,032,314 ("the '314 patent") (collectively, "the patents in suit"). After considering the arguments and evidence presented by the parties and the relevant portions of the record, the Court construes the disputed terms as set forth below.

**I. BACKGROUND**

Plaintiff Trent West ("West") is listed as the inventor on both patents in suit, which disclose methods for manufacturing durable jewelry. The patents' specifications note that in the past jewelry has been made of soft metals such as gold, silver or platinum, because such metals

---

[1] This disposition is not designated for publication in the official reports.

Case No. 5:10-cv-03124-JF (HRL)
ORDER CONSTRUING CLAIMS OF UNITED STATES PATENT NOS. 6,928,734 AND 7,032,314
(JFLC2)

are relatively easy to mold, shape, and polish. '734 pat., col. 1, lns. 22-25; '314 pat., col. 1, lns. 31-34. The specifications point out that such metals are "subject to wear, scratching and other damage detracting from their longevity appearance and value, i.e., wearing down of edges to a smooth and rounded state." '734 pat., col. 1 lns. 27-29; '314 pat., col. 1, lns. 36-38. The patents in suit disclose methods for using hard metals and ceramics, either alone or in combination with softer metals and/or gemstones, to manufacture jewelry that is "virtually indestructible when used in a normal jewelry wearing environment." '734 pat., col. 1, lns. 30-34; '314 pat., col. 1, lns. 39-43.

On July 16, 2010, West filed the instant action against Defendant Quality Gold, Inc. ("QGI"), a jewelry manufacturer and distributor, alleging infringement of the patents in suit. QGI has filed a counterclaim seeking declaratory judgment of invalidity and/or non-infringement. QGI also has filed third party complaints against individuals and entities from whom QGI purchased allegedly infringing jewelry for resale.

This is the third time that this Court has been asked to construe disputed terms in the patents in suit. On April 10, 2008, the Court construed disputed claim language of the subject patents in *Trent West v. Jewelry Innovations, Inc., et al.*, Case No. 5:07-cv-01812-JF (HRL) ("April 2008 Claim Construction Order"). On July 6, 2010, the Court again construed disputed claim language of the subject patents in *C&C Jewelry Mfg., Inc. v. Trent West*, Case No. 5:09-cv-01303-JF (HRL) ("July 2010 Claim Construction Order"). For the most part, West appears to be satisfied with the Court's prior constructions. However, QGI requests that the Court revisit certain of its constructions in light of new evidence and arguments presented in this case. It asserts that a number of claim terms in the subject patents are indefinite under 35 U.S.C. § 112, and that different constructions are appropriate with respect to other claim terms.

## II. LEGAL STANDARDS

Claim construction is a question of law to be decided by the Court. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995), *aff'd* 517 U.S. 370, 116 S.Ct. 1384 (1996). The patentee's use of a claim term in the specification is highly relevant to understanding the proper context in which the term is used. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir.

2005). The specification is the "single best guide to the meaning of a disputed term." *Id.*, citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).

## III. DISCUSSION

### A. Effect Of Prior Claim Construction Orders

This Court's prior claim construction orders are not dispositive of the issues presented in the instant proceeding. A determination of the scope of patent claims in an earlier suit may trigger application of the doctrine of collateral estoppel in a later suit. *Pfaff v. Wells Electronics, Inc.*, 5 F.3d 514, 518 (Fed. Cir. 1993). "[T]he law of the regional circuit applies to the issue of collateral estoppel" in the patent context. *RF Delaware, Inc. v. Pacific Keystone Tech., Inc.*, 326 F.3d 1255, 1261 (Fed. Cir. 2003). In the Ninth Circuit, collateral estoppel applies when it is established that: "(1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding." *Hydranautics v. FilmTec Corp.*, 204 F.3d 880, 885 (9th Cir. 2000). Here, West seeks to assert certain aspects of the prior claim construction orders against QGI, which was not a party to the earlier suits. The doctrine of collateral estoppel does not apply.

Other district courts have entertained claim construction arguments after construing the same claim terms in previous litigation. *See, e.g.*, *Alexsam, Inc. v. IDT Corp.*, Case No. 2-07-cv-420-TJW, 2010 WL 2639976, at *6 (Fed Cir. June 29, 2010) (district court modified prior claim construction issued in earlier action in light of arguments made in later action addressing same claims). The Federal Circuit has held that in the preliminary injunction context,"[d]istrict courts may engage in a rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves." *Jack Guttman, Inc. v. Kopykake Enterprises, Inc.*, 302 F.3d 1352, 1361 (Fed. Cir. 2002). Accordingly, the Court has considered carefully all of the evidence and arguments presented in connection with the June 13 *Markman* hearing.

B.     **Person Of Ordinary Skill In The Art**

As noted above, QGI contends that a number of the claims terms of the patents in suit are indefinite. "The test for definiteness asks whether one skilled in the art would understand the bounds of the claim when read in light of the specification." *AllVoice Computing PLC v. Nuance Communs., Inc.*, 504 F.3d 1236, 1240 (Fed. Cir. 2007) (citing *Miles Labs., Inc. v. Shandon, Inc.*, 997 F.2d 870, 875 (Fed. Cir. 1993)). The "proficiency of the hypothetical person of ordinary skill in the art . . . is essential to administering the definiteness test." *Id.*

The parties disagree as to both the relevant art and the qualifications of an individual having ordinary skill in that art.

1.     **The Art**

West asserts that the relevant art is "jewelry finger rings." This Court adopted West's definition in the July 2010 Claim Construction Order. QGI requests that the Court revisit the issue, asserting that the relevant art is "the art of making jewelry, medical, dental or industrial items having a hard wear-resistant material."

"The claims in suit provide a convenient starting point for determining the relevant art." *Orthopedic Equip. Co., Inc. v. United States*, 702 F.2d 1005, 1008 (Fed. Cir. 1983). Other factors bearing upon the determination of the relevant art include: (1) the type of skill necessary to understand the patent; (2) the type of art applied to the claims by the Patent and Trademark Office ("PTO"); and (3) "the nature of the problem confronting the inventor." *Id*. at 1008-09.

While the claims of the '314 patent disclose a method of manufacturing "a jewelry ring," '314 pat., col 9, ln. 29, the claims of the '734 patent disclose a method of manufacturing an "annular *jewelry article*," '734 pat, col. 21, lns. 58-59 (emphasis added). The '734 patent originally was titled "Jewelry Ring And Method Of Manufacturing Same." However, West requested and obtained a certificate of correction changing the title to "Method Of Making Annular, Tungsten-Carbide Jewelry Articles." Curatolo Decl., Exh. 1. Thus it appears that at least with respect to the '734 patent the relevant art encompasses the manufacture of "jewelry" and not just "jewelry rings." Moreover, the Court notes that the specification of the '314 patent states under the "Field Of Invention" heading that: "The present invention relates generally to

4

methods of making jewelry items such as finger rings, bracelets, earrings, body jewelry and the like . . . ." '314 pat., col. 1, lns. 20-22. Similarly, the "Summary Of The Invention" asserts that: "The invention relates to a jewelry article having an annular body formed of tungsten carbide." '314 pat., col. 3, ll. 44-45. Thus the patent claims, as informed by the specifications, suggest a field of art broader than "jewelry finger rings."

Both specifications discuss methods for manufacturing jewelry in rather technical terms. Accordingly, with respect to factor (1) above, it appears that substantial skill in the art of manufacturing jewelry is required to understand the patents. With respect to factor (2), it is undisputed that the PTO applied prior art relating to the manufacture of a variety of jewelry, such as rings, earrings, and bracelets. Finally, with respect to factor (3), the specifications state the inventions are intended to address problems arising from the fact that items of "jewelry" made from traditional metals are "subject to wear, scratching and other damage detracting from their longevity appearance and value, i.e., wearing down of edges to a smooth and rounded state." '734 pat., col. 1, ll. 27-29; '314 pat., col. 1, ll. 36-38. All of these factors suggest a field of art broader than "jewelry finger rings."

The question is whether the relevant art is so broad as to encompass "making jewelry, medical, dental or industrial items having a hard wear-resistant material" as argued by QGI. While the specification of the '734 patent does state that the methods for manufacturing jewelry described therein could be applied to the medical, dental, industrial, and scientific fields, '734 pat., col. 3, ll. 31-35, no details are provided with respect to such applications; to the contrary, all of the preferred embodiments and specific descriptive language address jewelry. The specification of the '314 patent does not refer to fields other than jewelry. QGI offers the declaration of its expert, Joseph Curatolo, in support of its proposed definition of the relevant art. Curatolo has expertise in manufacturing and marketing jewelry. Based upon this expertise, he offers his opinion that the patent disclosures suggest that the relevant art is "making jewelry, medical, dental or industrial items having a hard wear-resistant material." Curatolo Decl. ¶ 10. West objects to Curatolo's declaration, pointing out that Curatolo is not an expert in patent construction. The Court has considered Curatolo's opinion as argument – in addition to the

5

argument presented by counsel – with respect to the scope of the relevant art. The Court concludes that QGI's proposed definition is not supported by the patents or the prosecution history.

In light of all of the evidence and argument in the record, the Court concludes that the relevant art is "manufacturing jewelry."

### 2. Person Of Ordinary Skill

Having determined that the relevant art is manufacturing jewelry, the Court next must determine the expertise of a person with ordinary skill in that art as of the time of the inventions, that is, as of the effective filing date of the patent applications. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) ("the ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application"). The '736 patent and the '314 patent are continuations-in-part of Application No. 149,796, filed on September 8, 1998, now U.S. Patent No. 6,062,045. West offers the declaration of his expert, Marc Kuppersmith, who has expertise in jewelry manufacturing. Kuppersmith states that in 1998 one of ordinary skill in the art of jewelry finger rings would require "approximately five years experience in and exposure to the making of jewelry rings." Kuppersmith Decl. ¶ 13.

QGI offers the competing declaration of Curatolo, who opines that one of ordinary skill in the art would have "a higher or broader skill level" than the person described by Kuppersmith. Curatolo Decl. ¶ 30. Because Curatolo defines the relevant art to include "making jewelry, medical, dental or industrial items," he understandably asserts that knowledge of jewelry rings would be inadequate. *Id*. He also seems to suggest that even if the relevant art were restricted to jewelry rings, a person of ordinary skill in the art in 1998 would have expertise in using hard, wear-resistant materials to manufacture such rings. *Id.* ¶¶ 31-37. In contrast, Kuppersmith assumes that one skilled in the art would have knowledge only of traditional methods of jewelry manufacture, and does not suggest that a person of ordinary skill in the art in 1998 would have expertise in using tungsten carbide or other hard materials to manufacture jewelry.

The Court will adopt West's description of the qualifications of one of ordinary skill in the

Case No. 5:10-cv-03124-JF (HRL)
ORDER CONSTRUING CLAIMS OF UNITED STATES PATENT NOS. 6,928,734 AND 7,032,314
(JFLC2)

art, as modified to reflect the Court's determination that the relevant art is the manufacture of "jewelry" rather than "jewelry finger rings." Accordingly, the Court concludes that a person of ordinary skill in the art of "jewelry manufacturing" at the time in question would have "approximately five years experience in and exposure to the manufacture of jewelry." The Court declines to adopt QGI's proposed requirement that the individual have expertise in working with hard, wear-resistant material. Because West's patents disclose use of hard materials as an *innovation* in the manufacture of jewelry, it would be illogical to require that one of ordinary skill in the art have prior experience in making jewelry out of hard materials at the time in question.

Based upon their declarations, it appears that both parties' experts, Kuppersmith and Curatolo, are persons of ordinary skill in the art of manufacturing jewelry and are qualified to opine as to what a person of ordinary skill would understand from the patent language.

**C.  Indefiniteness**

Pursuant to 35 U.S.C. § 112, ¶ 2, the specification of a patent must "'conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.'" *Halliburton Energy Services, Inc. v. M-I LLC*, 514 F.3d 1244, 1249 (Fed. Cir. 2008) (quoting 35 U.S.C. § 112). "Because claims delineate the patentee's right to exclude, the patent statute requires that the scope of the claims be sufficiently definite to inform the public of the bounds of the protected invention, i.e., what subject matter is covered by the exclusive rights of the patent." *Id*. Absent such definiteness, competitors cannot avoid infringement. *Id*.

As noted above, "[t]he test for definiteness asks whether one skilled in the art would understand the bounds of the claim when read in light of the specification." *AllVoice,* 504 F.3d at 1240 (citation omitted). A claim may be held indefinite "only where a person of ordinary skill in the art could not determine the bounds of the claims, i.e., the claims were insolubly ambiguous." *Halliburton*, 514 F.3d at 1249. The fact that a particular claim presents a "difficult" or "formidable" challenge is insufficient to demonstrate indefiniteness. *Id*. Proof of indefiniteness must be made by clear and convincing evidence. *Id*. "A determination of claim indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent

7

claims." *Personalized Media Communications v. Int'l Trade Commission*, 161 F.3d 696, 705 (Fed. Cir. 1998)

QGI contends that five of the fifteen claim terms disputed by the parties are indefinite under 35 U.S.C. § 112. Four of the terms appear in independent claim 1 of the '314 patent, set forth as follows; the other appears in claim 10 of the '314 patent, which is set forth in conjunction with the discussion of that term below.

> 1. A method of making a jewelry ring which comprises: providing an annular finger ring made of a hard material consisting essentially of tungsten carbide, with the annular ring having at least one external **facet** and defining an aperture configured and dimensioned to receive a person's finger; and
>
> grinding the at least one external **facet** to a predetermined shape to provide a **pleasing appearance** to the jewelry ring, with the hard material being long wearing and **virtually indestructible during use** of the jewelry ring.

**1.    "facet"**

The term "facet" appears in claim 35 of the '734 patent, and in claims 1 and 22 of the '314 patent. The parties propose the following constructions:

| Term | West's proposed construction | QGI's proposed construction |
| --- | --- | --- |
| "facet" | no construction necessary | indefinite under 35 U.S.C. § 112 |

West argues without citation to authority that the term "facet" is readily understood term of common usage meaning "a smooth flat surface." The online Merriam-Webster dictionary defines "facet" as "a small plane surface (as on a cut gem)." Merriam-Webster Online Dictionary (2011), http://www.merriam-webster.com/dictionary/facet.

QGI contends that West's proposed definition cannot be correct in light of the following language from the specification of the '314 patent: "[a]s used in this description, the term facet is intended to include both cylindrical and frusto-conical surfaces as well as planar or flat surfaces." '314 pat., col. 9, ll. 16-18. When the specification reveals "a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess . . . the inventor's lexicography governs." *Phillips*, 415 F.3d at 1316. Because the specification defines the term "facet" explicitly, that definition applies, and the term is not indefinite.

8

QGI argues that the definition is nonsensical, because a facet cannot be both curved and flat. However, as used in the specification, the term "facet" refers to certain types of surfaces, *including* "cylindrical and frusto-conical surfaces as well as planar or flat surfaces." The definition does not require that a surface be both curved and flat at the same time.

### 2. "pleasing appearance"

"Pleasing appearance" appears in claim 1 of the '314 patent. The parties propose the following constructions:

| Term | West's proposed construction | QGI's proposed construction |
|---|---|---|
| "pleasing appearance" | not a claim limitation; alternatively, a facet having a surface angle of 1 to 40 degrees relative to the axis of symmetry of the body or a cylindrical or frusto-conical shape | indefinite under 35 U.S.C. § 112 |

QGI contends that the term "pleasing appearance" is completely dependent upon a person's subjective opinion and thus is indefinite under 35 U.S.C. § 112. "The scope of claim language cannot depend solely on the unrestrained, subjective opinion of a particular individual purportedly practicing the invention." *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1350 (Fed. Cir. 2005). "Some objective standard must be provided in order to allow the public to determine the scope of the claimed invention." *Id*. "[W]hen faced with a purely subjective phrase like "aesthetically pleasing," a court must determine whether the patent's specification supplies some standard for measuring the scope of the phrase." *Id*. at 1351.

West asserts that "pleasing appearance" is not a claim limitation, but simply describes the result of using the method recited in the claim. West relies heavily on *Syntex (U.S.A.) LLC v. Apotex, Inc.*, 407 F.3d 1371 (Fed Cir 2005). In *Syntex*, the Federal Circuit concluded that the term "in a stabilizing amount" was not a claim limitation but "simply describe[d] the intended result of using the weight to volume ratios recited in the claims." *Id*. at 1378.

This Court construed the term "pleasing appearance" in its July 2010 Claim Construction Order, adopting the following construction: "a facet having a surface angle of 1 to 40 degrees

relative to the axis of symmetry of the body or a cylindrical or frusto-conical shape." Upon reflection, and after considering the arguments presented in this case, the Court concludes that its prior construction was incorrect. The Court now is persuaded that the term "pleasing appearance" is not a claim limitation but rather describes the result of "grinding the at least one external facet to a predetermined shape." The thrust of the patent is that beautiful, durable jewelry can be created by using hard metal, and that if the inventor's method is utilized, it will result in a piece of jewelry that has a "pleasing appearance."

### 3. "substantially different visual effect to the jewelry ring"

This term appears in claim 10 of the '314 patent, which reads as follows:

> 10. The method of claim 1, which further comprises providing a cavity in the annular ring, the cavity having a predetermined size and shape that is configured to receive an insert of a decoration component that provides a **substantially different visual effect** to the jewelry ring.

The parties propose the following constructions:

| Term | West's proposed construction | QGI's proposed construction |
|---|---|---|
| "substantially different visual effect to the jewelry ring" | visibly noticeable difference or contrast between the hard body of the ring or having a different color, texture, or finish from the hard body of the ring | indefinite under 35 U.S.C. § 112 |

QGI contends that the term "substantially different" is indefinite, because the term is dependent upon the subjective opinion of a person of ordinary skill in the art. "When a word of degree is used the district court must determine whether the patent's specification provides some standard for measuring that degree." *Datamize*, 417 F.3d at 1351. West argues that the term is not a claim limitation and thus that it does not require construction. Alternatively West requests that the Court adopt its prior construction of the term: "visibly noticeable difference or contrast between the hard body of the ring or having a different color, texture, or finish from the hard body of the ring." July 2010 Claim Construction Order at 13.

In reaching its prior construction, the Court relied upon Kuppersmith's declaration statement that a person of ordinary skill in the art would understand the term to refer to a

10

noticeable contrast between the visual impression of the decoration component and of the hard metal comprising the bulk of the ring. Curatolo now submits a competing declaration asserting that a person of ordinary skill in the art would not understand how to measure the phrase "substantially different."

The Court concludes that the term is a limitation, and that its prior construction is correct. One of ordinary skill in the art would understand the patent to require that the material in the cavity look noticeably different from the hard metal comprising the ring.

**4. & 5. "virtually indestructible" and "virtually indestructible during use"**

The parties propose the following constructions:

| Term | West's proposed construction | QGI's proposed construction |
|---|---|---|
| "virtually indestructible" | practically incapable of having its aesthetic appearance destroyed | indefinite under 35 U.S.C. § 112 |

| Term | West's proposed construction | QGI's proposed construction |
|---|---|---|
| "virtually indestructible during use" | practically incapable of having its aesthetic appearance destroyed during employment and enjoyment in a normal daily jewelry wearing environment | indefinite under 35 U.S.C. § 112 |

The Court previously construed the claim term "virtually indestructible during use" in its April 2008 Claim Construction Order. The Court adopted West's proposed construction, "practically incapable of having its aesthetic appearance destroyed during employment and enjoyment in a normal daily jewelry wearing environment." Applying this definition to the shortened phrase "virtually indestructible," the Court's prior definition would be the one West proposes: "practically incapable of having its aesthetic appearance destroyed."

Having reexamined the '314 patent and considered the evidence and arguments presented in this case, the Court concludes that its prior construction is correct and that the term is not indefinite. The problem confronting the inventor was the fact that jewelry items made of soft materials such as gold, silver, and platinum are "subject to wear, scratching and other damage

detracting from their longevity appearance and value, i.e., wearing down of edges to a smooth and rounded state." '314 pat., col. 1, lns. 36-38. For example, the specification describes a design made on a tungsten ring that was "not possible" using prior art "because if such configuration had been made, the peaks 122 would have quickly been eroded, destroying the esthetic appearance of the ring." '314 pat., col. 7 ll. 57-64. The specification emphasizes that using hard metal solves this problem, because facet edges will not "wear off readily with normal everyday use." '314 pat., col. 9, ll. 1-3. Reading the patent as a whole, it appears that the limitation "virtually indestructible during use" requires that the hard metal retain its aesthetic appearance during normal use.

QGI argues that the patent does not define "use" or "normal use," and thus that the limitation is indefinite. QGI poses the following inquiry: "For example, if a salt water environment (or acidic or basic or abrasive, particle-laden, etc. environment) may affect either the surface appearance of a ring, or contribute to its failure, is that now by definition an abnormal use?" Resp. Claim Constr. Br. at 19. While it takes QGI's point, the Court concludes that one of ordinary skill in the art would know what standard wear and tear on jewelry looks like. The term is not indefinite.

**D.     Other Disputed Claim Terms**

The parties have identified ten additional disputed claim terms, addressed as follows:

**6.     "annular article" or "annular jewelry article"**

The terms "annular article" and "annular jewelry article" appear in independent claim 16 of the '734 patent, and in dependent claims 29, 33, and 35. The parties propose the following constructions:

| Term | West's proposed construction | QGI's proposed construction |
|---|---|---|
| "annular article" or "annular jewelry article" | ring shaped jewelry article | a ring shaped article of personal adornment |

The Court perceives no substantive difference between these definitions. At the hearing, counsel for QGI agreed, stating that QGI offered its alternative construction merely so as to avoid using a part of the claim term itself – "jewelry" – in the definition. QGI's point is well-taken. The Court will adopt QGI's construction.

1    **7.     "defining an aperture configured and dimensioned to receive a person's finger"**

2

3    This term appears in independent claim 1 of the '314 patent, set forth again here for the
4    sake of convenience:

5    1. A method of making a jewelry ring which comprises: providing an annular
     finger ring made of a hard material consisting essentially of tungsten carbide, with
6    the annular ring having at least one external facet and **defining an aperture
     configured and dimensioned to receive a person's finger**; and
7
     grinding the at least one external facet to a predetermined shape to provide a
8    pleasing appearance to the jewelry ring, with the hard material being long wearing
     and virtually indestructible during use of the jewelry ring.
9

10   The parties propose the following constructions:

| Term | West's proposed construction | QGI's proposed construction |
|---|---|---|
| "defining an aperture configured and dimensioned to receive a person's finger" | no construction necessary | defining an opening that is formed and sized such that a human's finger may fit there through |

15   West asserts that all of the words in this phrase are plain and understandable and thus do
16   not require any construction. The Court previously construed this phrase to mean: "defining an
17   aperture fashioned to have a spatial extent to conform to a person's finger." July 2010 Claim
18   Construction Order at 17. QGI points out that the Court's definition relies to some extent upon
19   the intent of the designer, a fact that the Court itself recognized was less than optimal. *See id.*
20   QGI offers a construction that eliminates the intent aspect: **"defining an opening that is formed
21   and sized such that a human's finger may fit there through."** West objects to QGI's proposed
22   construction as overly broad on the basis that a finger *may* fit through a napkin ring or a machine
23   part.
24   Because its prior construction relies on the intent of the designer, the Court will take the
25   instant opportunity to revise the construction. The Court has considered seriously whether any
26   construction is necessary at all, as the claim language is fairly straightforward. However, it seems
27   that some guidance is necessary. Accordingly, the Court will construe the term to mean "defining
28   an aperture that is formed and sized such that it will fit around and conform to the shape of a

person's finger."

### 8. "jewelry ring"

The term "jewelry ring" appears in claim 1 of the '314 patent. The parties propose the following constructions:

| Term | West's proposed construction | QGI's proposed construction |
|---|---|---|
| "jewelry ring" | a ring intentionally designed to be worn on person's finger | an article of personal adornment having the form of a circular band |

QGI objects to the intent element of West's proposed construction. The Court agrees that the intent element is problematic. However, QGI appears to be trying to expand the scope of the claim to cover ring-shaped jewelry that can be worn other than on a finger. The Court concludes that one of ordinary skill in the art would understand "jewelry ring" to mean "jewelry finger ring." The Court hereby adopts the following construction: "an article of personal adornment having the form of a circular band and being sized to fit on a finger."

### 9. "tungsten carbide" or "tungsten-carbide"

These claim terms appear in claim 18 of the '734 patent and claims 1 and 19 of the '314 patent. The parties propose the following constructions:

| Term | West's proposed construction | QGI's proposed construction |
|---|---|---|
| "tungsten carbide" or "tungsten-carbide" | no construction necessary | an extremely hard, fine gray powder whose composition is WC, used in tools, dies, wear-resistant machine parts, and abrasives |

The Court concludes that tungsten carbide is a term that readily would be understood by one of ordinary skill in the art, and that no construction is necessary.

### 10. "visually different"

The term "visually different" appears in claim 14 of the '314 patent. The parties propose the following constructions:

| Term | West's proposed construction | QGI's proposed construction |
|---|---|---|
| "visually different" | no construction required | with a dissimilar appearance to the eye |

The Court concludes that no construction is necessary with respect to this term.

**11.  "annular band"**

This term appears in claim 16 of the '734 patent. The parties propose the following constructions:

| Term | West's proposed construction | QGI's proposed construction |
|---|---|---|
| "annular band" | a ring shaped band | an article having a circular form |

"Annular" means "of, relating to, or forming a ring." Merriam-Webster Online Dictionary (2011), http://www.merriam-webster.com/dictionary/annular. This definition is reflected in West's proposed construction, which the Court adopts. QGI's proposed construction is overly broad, since "article" is much broader than "band."

**12.  "annular finger ring" or "annular ring"**

These terms appear in claims 1, 10 and 14 of the '314 patent. The parties propose the following constructions:

| Term | West's proposed construction | QGI's proposed construction |
|---|---|---|
| "annular finger ring" or "annular ring" | ring shaped finger ring | a ring worn on a finger |

Again applying the definition of "annular" discussed above, the Court adopts West's proposed construction.

**13.  "hard material"**

This term appears in claim 1 of the '314 patent. The parties propose the following constructions:

15
Case No. 5:10-cv-03124-JF (HRL)
ORDER CONSTRUING CLAIMS OF UNITED STATES PATENT NOS. 6,928,734 AND 7,032,314
(JFLC2)

| Term | West's proposed construction | QGI's proposed construction |
|---|---|---|
| "hard material" | no construction required | material having a density of at least 13.3 g/cm$^3$ |

The Court concludes that "hard material" is a term that readily would be understood by one of ordinary skill in the art, and that no construction is necessary. QGI does not dispute that hard material is a term of art that an applied material scientist would recognize, but it argues that one skilled in the art of manufacturing jewelry would not necessarily understand the term. However, as West points out, one skilled in the art at least would recognize that the term has a particular definition and easily would be able to access that definition. In effect, QGI requests that the Court import a claim limitation from the specification. The Court declines to do so.

**14.     "non-polished portion"**

This term appears in claim 34 of the '734 patent. The parties propose the following constructions:

| Term | West's proposed construction | QGI's proposed construction |
|---|---|---|
| "non-polished portion" | a portion that is not shiny or not smooth | an unfinished fractional component |

QGI's proposed construction is vague and unlikely to be helpful to the trier of fact. The Court adopts West's construction.

**15.     "precious metal"**

This claim term appears in claim 14 of the '314 patent. The parties propose the following constructions:

| Term | West's proposed construction | QGI's proposed construction |
|---|---|---|
| "precious metal" | gold, silver, platinum or their alloys | a great value substance which is a good conductor of electricity |

Once again, QGI's proposed construction is vague and unlikely to be helpful to the trier of fact. The specification does not reference the conductivity of precious metals. The specification does use the phrase precious metal to mean "gold, silver, platinum and other soft metals." '314

16

pat., col. 1, ll. 31-42.  The Court adopts this definition.

IT IS SO ORDERED.

Dated: 9/16/2011

_____
JEREMY FOGEL
United States District Judge

17

Case No. 5:10-cv-03124-JF (HRL)
ORDER CONSTRUING CLAIMS OF UNITED STATES PATENT NOS. 6,928,734 AND 7,032,314
(JFLC2)