\*\*E-Filed 3/28/2012\*\*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| TRENT WEST,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>QUALITY GOLD, INC.,<br><br>　　　　　Defendant.<br>─────────────────────────────<br>AND RELATED CLAIMS. | CASE NO. 5:10-cv-03124-EJD<br><br>ORDER DENYING MILLER'S MOTION TO DISMISS, ALTERNATIVE MOTION FOR MORE DEFINITE STATEMENT, AND ALTERNATIVE MOTION FOR SUMMARY JUDGMENT; AND DENYING JII'S MOTION FOR SUMMARY JUDGMENT<br><br>[Re: Docket Item Nos. 73, 83] |

　　　　Plaintiff Trent West ("West"), a jeweler and inventor, owns a number of patents that disclose methods for manufacturing durable jewelry. He filed the present action against Defendant Quality Gold, Inc. ("QGI"), a jewelry manufacturer and distributor, alleging that QGI has distributed jewelry that infringes two of his patents. *See* Docket Item No. 1. QGI has filed a counterclaim seeking declaratory judgment of invalidity and/or non-infringement of the two patents-in-suit. *See* Docket Item No. 21. QGI also has filed third party complaints against GMA, Inc. ("GMA"), GMA's president, Glenn Miller ("Miller"), and Jewelry Innovations, Inc. ("JII"), asserting that they supplied QGI with the allegedly infringing jewelry and thus are obligated to indemnify QGI in the

event that QGI is found liable to West.[1] *See* Docket Item Nos. 46, 50. Miller moves to dismiss the complaint against him pursuant to Federal Rule of Civil Procedure 12(b)(6), or alternatively for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e), or alternatively for summary judgment pursuant to Federal Rule of Civil Procedure 56. *See* Docket Item No. 73. JII moves for summary judgment with respect to the third party complaint against it. *See* Docket Item No. 83. The Court held a hearing on March 23, 2012. Having considered the parties' submissions and argument and the relevant law, the Court hereby DENIES Miller's motion in its entirety and DENIES JII's motion for summary judgment.

**I. BACKGROUND**

West asserts that in the late 1990s he began investigating ways to "utilize the unique esthetic and durability properties of tungsten carbide in jewelry finger rings." Docket Item No. 1, Complt. ¶ 5. He first applied for a patent covering tungsten carbide jewelry finger rings in 1998 and since then he has obtained a number of patents in this field. *Id*. West began selling tungsten carbide jewelry finger rings in 2000, and he asserts that by 2002 he was recognized as a pioneer in the "previously unrecognized market for tungsten carbide jewelry finger rings." *Id*. ¶ 6. West claims that QGI has infringed two of his patents, U.S. Patent Nos. 6,928,734 and 7,032,314. *Id*. ¶¶ 9-10, 14-15. He filed this patent infringement action against QGI on July 16, 2010.

QGI in turn filed third party complaints against GMA, Miller, and JII in April 2011, asserting that each supplied QGI with rings for resale. QGI claims that it is entitled to indemnity for any liability arising from resale of those rings, citing the implied warranty of non-infringement as set forth in Ohio Revised Code § 1302.25(C) and Utah Commercial Code § 70A-2-312(3). *See* Docket Item No. 46, 3rd Pty Complt against JII ¶¶ 13-16; Docket Item No. 50, Am'd 3rd Pty Complt against Miller and GMA ¶¶ 13-16. The cited statutes provide that "a contract for sale" contains a "warranty by the seller" as follows:

> Unless otherwise agreed a seller who is a merchant regularly dealing in goods of the kind warrants that the goods shall be delivered free of the rightful claim of any third person by way of infringement or the like but a buyer who furnishes specifications to

---

[1] QGI also filed a third party complaint against Glenn A. Miller & Associates, but it subsequently dismissed that complaint on June 10, 2011.

2

CASE NO. 5:10-cv-03124-EJD
ORDER DENYING MILLER'S MOTION TO DISMISS ETC.

the seller must hold the seller harmless against any such claim which arises out of compliance with the specifications.

Ohio R.C. § 1302.25(C); Utah C.A. § 70A-2-312(3).

## II. MILLER'S MOTIONS

### A. Motion to Dismiss

Pursuant to Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief may be granted. "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). For purposes of evaluating a motion to dismiss, the court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

However, mere conclusions couched as factual allegations are not sufficient to state a claim. *See Papasan v. Allain,* 478 U.S. 265, 286 (1986); *see also McGlinchy v. Shell Chem. Co.,* 845 F.2d 802, 810 (9th Cir. 1988). The complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009). Thus, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief. " *Moss v. U.S. Secret Serv.,* 572 F.3d 962, 969 (9th Cir. 2009).

Miller contends that the amended third party complaint against him and GMA is deficient because all of the charging allegations are against "Miller and/or GMA." For example, the complaint alleges that "Miller and/or GMA were merchants regularly dealing in goods of the kind implicated by this suit." Docket Item No. 50, Am'd 3rd Pty Complt against Miller and GMA ¶ 12. It goes on to state that "Miller and/or GMA sold jewelry finger rings to Quality Gold during the time period on or about October 2008 through on or about June 2010." *Id*. ¶ 13. The complaint

3

United States District Court
For the Northern District of California

quotes the statutory language governing the implied warranty of non-infringement as adopted by Ohio and Utah, *id*. ¶ 11, and asserts that, "to the extent that Quality Gold is found to have infringed one or both of U.S. Patent No. 6,928,734 and U.S. Patent No. 7,032,314, for selling rings that Quality Gold purchased from Miller and/or GMA, Miller and/or GMA then violated the above-quoted implied warranty of non-infringement by selling goods that carry with them the implied warranty of non-infringement to Quality Gold." *Id*. ¶ 16. Miller argues that because QGI uses the phrase "and/or," "part of [QGI's] allegation is that Mr. Miller *or* GMA sold goods to it and was a merchant in that kind of goods." Docket Item No. 73, Mot. at 3 (emphasis in original). Miller defines "or" as "used to indicate an alternative," and then concludes, "[b]ecause of [QGI's] *'or'* allegation, which claims that 'one or the other' and, therefore, not both of the defendants was a seller . . . [QGI's] pleading admits that it has no case against one of the two defendants." *Id*. (emphasis in original). Miller then assumes that GMA is the "one" defendant that was the seller, reasoning that QGI has made "an admission that only defendant GMA and not Mr. Miller is a viable defendant." *Id*. at 4. Miller asks the Court to dismiss the action against him on this basis.

Miller has not cited, and the Court has not discovered, any authority for the proposition that the phrase "and/or" should be read as "or." To the contrary, "the words 'and/or' commonly mean 'the one or the other or both.'" *Local Div. 589, Amalgamated Transit Union, AFL-CIO, CLC v. Commonwealth*, 666 F.2d 618, 627 (1st Cir. 1981); *see also Detroit Water Team Joint Venture v. Agricultural Ins. Co.*, 371 F.3d 336, 342 (6th Cir. 2004) (construing "and/or" to mean "either or both"). Applying the phrase's common meaning, QGI alleges that Miller or GMA, *or both of them*, were sellers within the meaning of the implied warranty of non-infringement. Accordingly, Miller's motion to dismiss on the basis that QGI has conceded that only GMA was a seller is DENIED.

### B. Motion for More Definite Statement

"A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Miller asserts that QGI's use of the phrase "and/or" in its complaint renders the pleading so vague that Miller cannot discern what claims are asserted against him. However, even a cursory reading of the complaint, which is only four pages long, makes clear

4

CASE NO. 5:10-cv-03124-EJD
ORDER DENYING MILLER'S MOTION TO DISMISS ETC.

that QGI seeks indemnity from Miller under the implied warranty of non-infringement. The only claim in the pleading is entitled "Breach of Implied Warranty Against Infringement." Docket Item No. 50, Am'd 3rd Pty Complt against Miller and GMA p. 2. In that claim, QGI alleges that "Miller and/or GMA" – meaning Miller or GMA or both of them – sold jewelry finger rings to QGI during the relevant time period. *Id*. ¶ 13. The prayer requests that Miller and/or GMA be required to reimburse QGI for any judgment of infringement rendered against it in this action. *Id*. ¶ 16. Because the basis for QGI's claims is apparent on the face of the amended third party complaint, Miller's alternative motion for more definite statement is DENIED.

### C. Motion for Summary Judgment

In the event that it declines to dismiss the complaint pursuant to Rule 12(b)(6), Miller request that the Court construe the motion as being brought under Rule 56. "If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). "All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id*. Miller submits his own declaration stating that "all sales to QGI were made by GMA, and that no sales were ever made by Miller as an individual." Docket Item No. 73-1, Miller Decl. ¶ 2. He also attaches a printout of purchase orders showing goods ordered from "GMA." *Id*. at Exh. A. Based upon this evidence, Miller wishes the Court to make a factual finding that he did not sell any goods to QGI.

QGI opposes conversion of the motion to dismiss to a motion for summary judgment, pointing out that it has not had an opportunity to depose Miller or GMA, or to explore fully the relationship between Miller and GMA. QGI asserts that it would like to investigate the possibility that Miller could be liable if the corporate veil is pierced or *alter ego* is found. Docket Item No. 74, Opp. p. 6. Under the circumstances, the Court is not inclined to exercise its discretion to treat the motion as one for summary judgment. *See Texas Partners v. Conrock Co.*, 685 F.2d 1116, 1119 (9th Cir. 1982) (finding summary judgment prior to adequate discovery premature). Accordingly, Miller's alternative motion for summary judgment is DENIED. This ruling is without prejudice to Miller's filing of a properly noticed motion for summary judgment in the future.

5

CASE NO. 5:10-cv-03124-EJD
ORDER DENYING MILLER'S MOTION TO DISMISS ETC.

### III. JII'S MOTION FOR SUMMARY JUDGMENT

**A. Legal Standard**

"Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Samuels v. Holland American Line-USA Inc.*, 656 F.3d 948, 952 (9th Cir. 2011) (citing Fed. R. Civ. P. 56(a)). "In considering a motion for summary judgment, we must draw all reasonable inferences in favor of the nonmoving party." *Id*. "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Id*. (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)).

**B. Discussion**

As is noted above, West has sued QGI for patent infringement arising out of QGI's distribution of tungsten carbide jewelry rings, and QGI in turn has sued JII seeking indemnification to the extent that QGI is found liable for patent infringement based upon QGI's resale of rings originally acquired from JII. JII argues that West's claims against QGI, and by extension QGI's claims against it, are precluded by a settlement entered into between it and West in another lawsuit in this district, *Trent West v. Jewelry Innovations, Inc.*, Case No. 5:07-cv-01812-JF.

As an initial matter, West[2] objects to admission of the settlement agreement, asserting that it is not properly authenticated. JII's counsel cured this defect by submitting an authenticating affidavit at the hearing. There does not appear to be any serious contention that the document is not what it purports to be. Accordingly, the Court will consider the settlement agreement for purposes of this motion.

In the West-JII litigation, West alleged that JII and others had infringed upon the same patents that are at issue here, as well as one additional patent. In settling those claims, West agreed that it "fully releases JII and its respective buying agents, divisions, affiliate and subsidiary

---

[2] QGI has filed a conditional non-opposition to JII's motion in light of the fact that the motion turns upon JII's argument that QGI does not have viable claims against JII *because* West does not have viable claims against QGI. JII asserts that West lacks standing to oppose its motion for summary judgment against QGI. West clearly does have standing, as JII's argument implicates West's rights against QGI.

6

CASE NO. 5:10-cv-03124-EJD
ORDER DENYING MILLER'S MOTION TO DISMISS ETC.

United States District Court
For the Northern District of California

corporations, and any and all officers, directors, shareholders, owners, managers, agents, employees, successors and assigns of any of the foregoing ("the JII released parties") . . . from any and all claims . . . known or unknown . . .which are based on, arise out of or relate in any way to the Action, the involved patents, or the additional patents." Docket Item No. 83-2, Settlement ¶ 4.[3] JII asserts that this release of "JII released parties" extends to QGI. While the Court has some difficulty following JII's argument, JII appears to be contending that because QGI purchased tungsten finger rings from JII during the time frame in which the settlement agreement was executed, and because West knew about such purchase, QGI qualifies as an "assign" of JII for purposes of the settlement agreement. JII's only evidence that West knew that JII had sold tungsten rings to QGI is a declaration of Allen McIllece, the president of *JII*. See Docket Item 83-1, McIllece Decl. ¶ 7. Mr. McIllece is not competent to testify as to what West knew, and the declaration provides no foundation for McIllece's assertion. Moreover, even if JII had introduced competent evidence that West knew that JII distributed tungsten rings to QGI, it is entirely unclear how that fact could transform QGI into an "assign" of JII. As West's counsel pointed out at the hearing, the settlement agreement does *not* release customers of JII. JII does not cite any authority or evidence showing that in the jewelry industry a company's customer commonly would be understood to be its "assign" in a situation such as the one before the Court.

JII relies upon *Glenayre Electronics, Inc. v. Jackson*, 443 F.3d 851 (Fed. Cir. 2006). In that case, the plaintiff patentee, Jackson, obtained a judgment after trial that the district court determined fully compensated him for any infringement by the defendant, Glenayre, *or Glenayre's customers*. *Id.* at 856. The court held expressly that:

> Jackson has fully litigated his full measure of damages such that the remitted damages award that Jackson collected constitutes full compensation as a matter of law for (1) direct infringement of the '900 patent by Glenayre due to its manufacture and sale of infringing products; (2) direct infringement of the '900 patent by Glenayre's customers due to their use of products purchased from Glenayre; and (3)

---

[3] The settlement agreement has been designated confidential by the parties, and it was filed under seal in connection with JII's motion for summary judgment. At the hearing, both parties agreed to a limited waiver of confidentiality with respect to paragraphs 1 and 4 of the settlement agreement. The Court's discussion of the specific terms of the settlement agreement focuses on paragraph 4, which is within the parties' waiver.

7

CASE NO. 5:10-cv-03124-EJD
ORDER DENYING MILLER'S MOTION TO DISMISS ETC.

possible indirect infringement of the '900 patent by Glenayre due to its sale of infringing products and the resulting use of those same products by its customers.

*Id*. These circumstances differ markedly from those in the present case. Here, there has been no adjudication that the settlement between West and JII constituted West's "full measure of damages" for the infringement alleged in that case. Likewise, there has been no adjudication that the settlement was intended to compensate West for infringement of its patents by JII's customers. As is noted above, the settlement makes no mention of JII's customers, nor does it limit West's right to sue such customers for direct patent infringement should such suit be warranted.

**IV. ORDER**

Good cause therefor appearing,

(1) Miller's motion to dismiss, alternative motion for more definite statement, and alternative motion for summary judgment are DENIED; and

(2) JII's motion for summary judgment is DENIED.

Dated: March 28, 2012

EDWARD J. DAVILA
United States District Judge

8

CASE NO. 5:10-cv-03124-EJD
ORDER DENYING MILLER'S MOTION TO DISMISS ETC.